UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VICTORIA LYNN MURDOCK, | Case No. 2:17-cv-05704-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Victoria Lynn Murdock ("Plaintiff") filed a Complaint on August 1, 2017, seeking review of the denial of her application for Supplemental Security Income ("SSI") by the Commissioner of Social Security ("Commissioner" or "Defendant"). Dkt. No. 1. The parties filed consents to proceed before the undersigned Magistrate Judge. Dkt. Nos. 12, 13. In accordance with the Court's Order Re: Procedures in Social Security Appeal (Dkt. No. 10), on April 5, 2018, the parties filed a Joint Stipulation addressing their respective positions. Dkt. No. 22 ("Jt. Stip."). The Court has taken the Joint Stipulation under submission without oral argument and as such, this matter now is ready for decision.

## I.
## BACKGROUND

On November 26, 2013, Plaintiff applied for SSI, alleging disability beginning on the same date. Administrative Record ("AR") 136-44. After her application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing. AR 89-91. Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on November 25, 2015. AR 38-69.

On December 24, 2015, the ALJ issued a decision finding Plaintiff was not disabled. AR 19-37. The ALJ determined that Plaintiff suffered from the following severe impairments: "right shoulder adhesive capsulitis, bilateral rotator cuff syndrome, bilateral carpal tunnel syndrome, lumbar spine strain/sprain, major depressive disorder, and anxiety disorder." Id. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 26. The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> [Plaintiff] can stand and/or walk each (with normal breaks) for a total of six hours in an eight-hour workday, sit (with normal breaks) for a total of six hours in an eight-hour workday, can perform occasional pushing or pulling of hand controls with the right dominant upper extremity and frequently push or pull hand controls with the left upper extremity, can occasionally climb ramps/stairs, can never climb ladders, ropes or scaffolds, can occasionally balance, stoop, kneel, crouch or crawl, can occasionally perform overhead reaching with the bilateral upper extremities and can frequently reach in all other directions with the bilateral upper extremities, can frequently but not constantly

> handle and finger with the bilateral upper extremities, must avoid
> even moderate exposure to vibration, unprotected heights,
> dangerous moving machinery as well as operating motor vehicles
> at work, is limited to simple and routine tasks, can interact
> appropriately with coworkers, supervisors and the general public
> but should limit interaction with the general public to occasional,
> and can respond appropriately to usual work situations and
> changes in a routine work setting.

AR 27.

The ALJ found that Plaintiff was incapable of performing her past relevant work as a security guard (Dictionary of Occupational Titles ("DOT") 372.667-034). AR 32. However, the ALJ concluded Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy, including: housekeeping cleaner (DOT 323.687-014); mail clerk (DOT 209.687-026); production line solderer (DOT 813.684-022). AR 33. The ALJ concluded that Plaintiff was not disabled from the alleged onset date through the date of the decision. Id.

Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. AR 133-35. On June 5, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-7. This action followed.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review a decision to deny benefits. The ALJ's findings should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such

relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). The standard of review is "highly deferential." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). However, a court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

Lastly, even when the ALJ commits legal error, the Court upholds the decision where that error is harmless. Molina, 674 F.3d at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

### III.

### DISCUSSION

The parties present one disputed issue: Whether the ALJ properly considered the opinion of examining physician, Dr. Jonathan Kaplan ("Dr. Kaplan"), as set forth further below. Jt. Stip. at 4.

A. **Applicable Law**

In assessing medical opinions, the ALJ must consider that there are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). To reject the uncontradicted opinion of an examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

Although an ALJ is not required to discuss every piece of evidence or address every issue, he must explain why significant probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1394–95 (9th Cir. 1984). An ALJ's opinion which ignores medical opinions effectively rejects those opinions; a failure to make findings supporting that rejection constitutes error. Smolen v. Chater, 80 F.3d 1273, 1286 (9th Cir. 1996).

B. **Analysis**

On February 22, 2014, Dr. Kaplan performed an orthopedic consultation. AR 292-99. Plaintiff described the following complaints at the examination: right shoulder pain; right elbow pain; bilateral wrist and hand pain; left knee pain; and lower back pain. AR 292. Dr. Kaplan diagnosed Plaintiff with the following: right shoulder adhesive capsulitis; bilateral carpal tunnel syndrome; and lumbar spine strain/sprain (mild in nature). AR 298. Dr. Kaplan concluded:

> From a functional standpoint, [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk six hours out of an eight hour workday. She can sit six hours out of an eight hour workday. Climbing, stooping, kneeling, and crouching can be done occasionally. [Plaintiff] should frequently

> limit the use of her right shoulder for overhead activities as well as bilateral hands for fine and gross movements of the hands. She does not have any restrictions regarding the use of her left shoulder. She should continue to use the bilateral wrist splints as they seem to be helping her carpal tunnel syndrome. She should continue to use the sling on the right upper extremity until her adhesive capsulitis [is] resolved. She does not require any assistive devices for short or long distances of ambulation.

AR 298.

The ALJ summarized Dr. Kaplan's findings and conclusion in his decision. AR 30-31. The ALJ accorded partial weight to Dr. Kaplan's opinion providing that "subsequent MRI scans of the shoulders showing right shoulder partial tearing involving supraspinatus tendon" (citing AR 430, 501) and "left shoulder moderate acromioclavicular osteoarthrosis with findings suggesting external impingement" (citing AR 494) supported a limitation of occasional overhead reaching as opposed to frequent. AR 31.

Plaintiff argues that the ALJ erred in failing to take into account Dr. Kaplan's opinion in two specific respects: (1) that Plaintiff should continue the use of bilateral wrist splints for her carpal tunnel syndrome; and (2) that Plaintiff should continue to wear a sling to support her right upper extremity. Jt. Stip. at 7.

In response, the Commissioner argues that Dr. Kaplan did not opine, nor does the record indicate, that wrist splints or the use of a sling impeded Plaintiff's ability to perform work activity or constituted a basis for a work restriction. Jt. Stip. at 9-10. The Commissioner notes that, with respect to wrist splints, Plaintiff testified that she only used them "intermittently," admitting that she may go a week without using them, and the ALJ noted that Plaintiff did not use them at the hearing. Id. at 9-10 (citing AR 29, 49-50). Further, the

Commissioner notes that Plaintiff reported using the sling since August 2013, but continued to work until November 2013, lifting as much as 4 gallons of water at a time as a part-time caregiver. Id. at 10-11 (citing AR 293, 42-44 (also describing activities including doing laundry and cooking)). The Commissioner also notes that Dr. Kaplan indicated that the use of the sling was only temporary, until Plaintiff's adhesive capsulitis resolved, and notes the subsequent improvement reported by Plaintiff after Dr. Kaplan's report. Id. at 11 (citing AR 29, 478, 481, 483-84).

Replying to the Commissioner's arguments, Plaintiff asserts that the ALJ's "silence" with respect to Dr. Kaplan's opinion relating to the splints and the arm sling constitutes reversible error. Jt. Stip. at 12.

The Court finds that the ALJ's decision contains clear and convincing reasons that are supported by substantial evidence for not including an express limitation requiring the use of splints or an arm sling in Plaintiff's RFC.

As an initial matter, the Court notes that Dr. Kaplan's opinion does not state that splints or a sling are mandatory limitations; rather, Dr. Kaplan writes that Plaintiff "should continue to use" the splints and sling. AR 298. This is to be contrasted with the definitive language predominantly used by Dr. Kaplan regarding functionality, setting for precisely what Plaintiff "can," and by negative implication, cannot do. Id. (Plaintiff "can lift and carry"; "can stand and walk"; "can sit"; "[c]limbing, stooping, kneeling and crouching can be done"; but "should frequently limit the use of her right shoulder"). Thus, although Dr. Kaplan expressed a willingness and ability to set forth specific limitations in some regards, he couched the splint and sling portions of his opinion as recommendations, that is, "should continue to use" rather than definitive requirements or limitations. Thus, to the extent the RFC did not incorporate the use of wrist splints or a sling, it did not constitute a rejection of an express requirement set forth by a physician.

Further, the ALJ's decision is not silent with respect to the splints or the underlying shoulder issues upon which the sling suggestion was based. The ALJ specifically recounted the two aspects of Dr. Kaplan's opinion at issue here – the wrist splints and right shoulder sling. AR 31. One paragraph removed from those references, the ALJ gave "partial weight" to Dr. Kaplan's opinion, noting subsequent MRI scans of the shoulders, but agreeing with Dr. Kaplan's assessment of light exertional work. Id. Plaintiff is correct that the ALJ, in the paragraph of the decision discussing the partial weight afforded to Dr. Kaplan's opinion, did not expressly reference the wrist splints and right shoulder sling. However, other portions of the opinion discussed the splints and the right shoulder at length.

With respect to the splints, the ALJ specifically found that Plaintiff's own testimony showed she only used them "off and on," sometimes did not use them for a week at a time, did not wear them to the hearing, and testified that she had no trouble using a cell phone. Jt. Stip. at 29. This testimony provided clear and convincing reasons, supported by substantial evidence, for the ALJ's decision not to include a limitation in the RFC requiring Plaintiff to wear wrist splints, particularly in light of the fact that Dr. Kaplan merely recommended their use.

With respect to the issue of the right arm sling, Dr. Kaplan merely wrote, in February 2014, that a sling "should" be used "until [Plaintiff's] adhesive capsulitis [is] resolved." AR 298. In his decision, the ALJ expressly recounted the record that: (a) in May 2014 Plaintiff stated "her right shoulder was much better"; (b) in June 2014 Plaintiff described "she was doing much better with her right shoulder" and "could do everything much better with her right upper extremity"; (c) in July 2014, it was noted that Plaintiff's "right shoulder pain and range of motion improved with physical therapy"; and (d) in July 2014, when offered an injection, Plaintiff declined – all of which evidences

rapid and significant improvement in Plaintiff's right shoulder after Dr. Kaplan's assessment. AR 28. By the time of the hearing, Plaintiff recounted that physical therapy "really helped me as far as the motion is concerned," had full range of motion in both shoulders, and could lift her right arm above her head without any pain. AR 50-52. Even to the extent Dr. Kaplan's statement that Plaintiff "should" use a right shoulder sling could be interpreted as a work-related recommended limitation, the recommendation was limited in time until the underlying issue resolved itself. The ALJ properly considered the medical evidence and Plaintiff's own testimony, including the apparent resolution of the limitation on her range of motion in her right shoulder, in formulating the RFC. To the extent that the ALJ's non-inclusion of the suggested, temporary right arm sling in Plaintiff's RFC can be considered an implicit rejection of a portion of Dr. Kaplan's opinion, the Court finds the ALJ's decision is based on clear and convincing reasons supported by substantial evidence.

The ALJ did not err in his consideration of Dr. Kaplan's opinion relating to wrist splints and a right shoulder sling in assessing Plaintiff's RFC. Further, to the extent Plaintiff's argument is that the ALJ erred in not specifically tying his findings regarding the splints and right shoulder to Dr. Kaplan's opinion that Plaintiff "should" use the splints and sling (see Jt. Stip. at 12), ever were the Court to conclude that the ALJ did err in not more expressly tying his wrist splint and right shoulder findings in the context of discussing Dr. Kaplan's opinion, the Court finds that such error would be harmless as it would be "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." Molina, 674 F.3d at 1122 (citations omitted). Specifically, set forth above, the ALJ recounted the medical evidence and Plaintiff's own testimony regarding her inconsistent use of wrist splints and significant improvement in her right shoulder. Thus, the record as a whole

supports the RFC assessment on the relevant issues and provides clear and convincing reasons, supported by the substantial evidence to reject Dr. Kaplan's recommendations, even if the ALJ did not expressly describe his findings as a rejection of Dr. Kaplan's recommendations.

## IV.
## ORDER

IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: April 19, 2018

_____
JOHN D. EARLY
United States Magistrate Judge